**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KOJON HEARD, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:21-CV-01374 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| JAY WAYNE JENKINS p/k/a "JEEZY"; | ) | |
| YJ MUSIC, INC.; DEF JAM RECORDS; | ) | |
| and UNIVERSAL MUSIC GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In 2018, Kojon Heard, who professionally goes by the name SmackWater, created and posted a video to Instagram. R. 8, Second Am. Compl. ¶ 13.[1] Heard named the video, "The Streets Ain't for Everybody," and it included vocals of an original song that he had composed. *Id*. ¶¶ 13, 17. Around a year later, Heard learned that the audio from his Instagram video had been used as a voice-over on another recording artist's song. Heard brought this lawsuit alleging that Jay Wayne Jenkins, who performs under the name Jeezy, infringed on Heard's work in violation of copyright law, 17 U.S.C. § 106, and that Jeezy committed fraud.[2] Second Am. Compl. ¶¶ 28–35, 39–42. Heard similarly alleges that Universal Music Group, Inc., and YJ Music, Inc. have

---

[1] Citations to the record are noted as "R." followed by the docket number.
[2] The Court has federal-question jurisdiction over this case under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

willfully contributed to the copyright infringement by marketing Jeezy's song.[3] *Id.* ¶¶ 36–38. Setting aside the merits of the infringement claims for now, the Defendants present a threshold argument: there is no personal jurisdiction over them in Illinois. For the reasons explained in this Opinion, the defense is correct that there are not enough facts connecting them to Illinois, and the case must be dismissed for lack of personal jurisdiction.

## I. Background

For purposes of this motion, the Court accepts as true the factual allegations in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But not many background facts are needed to resolve this dismissal motion on personal-jurisdiction grounds.

Heard identifies as an Instagram influencer. Second Am. Compl. ¶ 4. As part of his job, he performs comedy; produces audio and video content; and writes, raps, and performs music. *Id.* In order to promote himself, Heard posts short videos and skits, sometimes including audio of his music. *Id.* ¶ 11. He has garnered an Instagram following so far of around 50,000 followers. *Id.*

---

[3]Heard originally named "Def Jam Records & Universal Music Group, Inc." as a defendant. The Defendants asserted that, in reality, "Def Jam Records" is actually an unincorporated division of a corporate entity known as UMG Recordings, Inc. R. 15, Defs.' Mot. Dismiss at 1. The Defendants do, however, repeat Heard's assertion that Def Jam Records is a corporation organized under Delaware law with its principal place of business in New York. *See* Second Am. Compl. ¶ 9; Defs.' Mot. Dismiss at 6. In any event, as discussed throughout this Opinion, none of the named corporate defendants are alleged to be incorporated in Illinois or have any specific business operations in Illinois. *See* Second Am. Compl. ¶¶ 8–10; Defs.' Mot. Dismiss at 6, 8.

In 2018, Heard created a 45-second video, which included his own original audio. Second Am. Compl. ¶¶ 13, 19. A few months later, the musical artist Jeezy reached out to Heard to ask for his contact information. *Id.* ¶ 14. The next year, Jeezy sent Heard a direct message on Instagram saying that Jeezy would like to collaborate with Heard. *Id.* ¶ 15a.[4] Indeed, a woman from Jeezy's record label followed up with Heard and shared some additional details: Jeezy wanted to use one of Heard's recordings as a voice-over on his next album. *Id.* ¶ 15b. Heard sent his publishing information to the record-label representative sometime in mid-August. *See id.* ¶¶ 15b–16. But Heard received no more word from the representative. *Id.* ¶ 16.

Very shortly afterwards, on August 23, 2019, Jeezy released an album through Universal Music Record Group called "the Legend of the Snowman." Second Am. Compl. ¶ 17. To Heard's surprise, Jeezy's song, "Don't Forget," included Heard's audio from "The Streets Ain't for Everybody." *Id.* ¶¶ 13, 18. The audio from Heard's Instagram video had been downloaded, spliced, and interspersed throughout Jeezy's song as a voice-over. *Id.* ¶ 19. Neither Jeezy nor Jeezy's record label gave any kind of attribution to Heard for the original audio. More than a year later, in 2020, Heard registered the Instagram video with the U.S. Copyright Office. *Id.* ¶ 20. After Heard filed this lawsuit, the Defendants moved to dismiss the case for lack of personal jurisdiction. Defs.' Mot. Dismiss.

---

[4]The Second Amended Complaint contains two paragraphs that are both separately labeled as paragraph "15." For ease of understanding, this Opinion will refer to the first paragraph 15 as "15a" and the second paragraph 15 as "15b."

## II. Legal Standard

When a defendant challenges personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the burden shifts to the plaintiff to establish that jurisdiction is proper, at least by a *prima facie* case. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (explaining that plaintiffs must generally only make a *prima facie* case of personal jurisdiction). But if important facts that are necessary to decide the issue are in dispute, the Court must grant discovery (if needed to uncover the pertinent facts) and, if need be, hold an evidentiary hearing. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Ultimately, when facts are disputed, the plaintiff must prove that personal jurisdiction applies by a preponderance of the evidence. *Id.*; *Purdue Research Found.*, 338 F.3d at 783. This makes review of jurisdiction quite different from dismissal motions that challenge the merits, in which the Court "accepts all well-pleaded allegations in the complaint as true." *Hyatt Int'l Corp.*, 302 F.3d at 713.

## III. Analysis

Under the Federal Rules of Civil Procedure, federal courts generally may exercise personal jurisdiction over a defendant if the defendant is subject to the jurisdiction of the state court in which the district court sits. Fed. R. Civ. P. 4(k)(1)(A). In Illinois, that means this Court "may exercise personal jurisdiction over [the Defendants] if it would be permitted to do so under the Illinois long-arm statute." *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). "Because Illinois permits personal jurisdiction if it would be authorized by either the Illinois Constitution or

4

the United States Constitution, the state statutory and federal constitutional requirements merge." *Id.* Under the federal Constitution, personal jurisdiction requires a defendant to have made "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up).[5]

Personal jurisdiction can be either general or specific. The Court may exercise general jurisdiction if the defendant's contacts with the forum state are "so continuous and systemic as to render them essentially at home" there, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (cleaned up), even if the lawsuit has no relationship to the defendant's contacts to that state. In contrast, specific jurisdiction only allows courts to hear lawsuits where the defendant's contacts with the forum state give rise to the plaintiff's claims. *See Curry v. Revolution Labs., LLC*, 949 F.3d 385, 395 (7th Cir. 2020).

Here, Heard fails to sufficiently allege—let alone offer any evidence—that the Defendants' contacts with Illinois are so extensive that general jurisdiction applies. *See, e.g.*, Second Am. Compl. ¶ 3; Defs.' Mot. Dismiss at 7–8. Indeed, Heard does not mention general jurisdiction at all. *See generally* Second Am. Compl. Jeezy is a resident of Georgia, and as to the corporate entities in particular, Heard has made no allegations that any of those Defendants are incorporated in Illinois or have their principal places of business in Illinois. *Id.* ¶¶ 8–10; Def.'s Mot. Dismiss at 8. Outside

---

[5]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

5

of the state (or states) of an entity's incorporation and principal place of business, general jurisdiction applies "only when the continuous corporate operations within a state are so substantial and of such a nature as to justify suit on causes of action arising from dealings entirely distinct from those activities." *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 698 (7th Cir. 2015) (cleaned up). And outside the typical home state, that level of activity is rare indeed. *See Daimler AG v. Bauman*, 571 U.S. 117, 129 (2014). In addition to not arguing that general jurisdiction applies, Heard includes no passing factual allegations that could show the kind of contacts needed to make any of the Defendants essentially at home in Illinois. Because general jurisdiction does not apply here, the Court moves on to specific jurisdiction.

In contrast to general jurisdiction, specific jurisdiction "depends on an affiliation between the forum and the underlying controversy." *Goodyear*, 564 U.S. at 919 (cleaned up). Specific jurisdiction applies when a defendant has directed its activities at the forum state, and the cause of action relates to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The Seventh Circuit has held that "the contacts supporting specific jurisdiction can take many different forms." *uBID*, 623 F.3d at 426. What is essential is that the defendant's contacts be purposefully directed at the forum state. *Id.*; *Burger King*, 471 U.S. at 475. The requisite connection to the forum must arise from the defendant's conduct so that the defendant would anticipate being hauled into court there; personal jurisdiction cannot be based solely on the defendant's relationship to the plaintiff or the plaintiff's unilateral activities.

*Walden v. Fiore,* 571 U.S. 277, 284–85 (2014); *Felland v. Clifton,* 682 F.3d 665, 673 (7th Cir. 2012).

To make out a *prima facie* case of specific personal jurisdiction, a plaintiff must adequately allege three elements: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland,* 682 F.3d at 673 (cleaned up); *Int'l Shoe Co.,* 326 U.S. at 316 (cleaned up).

Heard fails to sufficiently allege any of the elements necessary to show specific jurisdiction. His attempts to allege and to argue for specific jurisdiction rely on broad and general statements about the Defendants' business activities. *See, e.g.*, Second Am. Compl. ¶¶ 3, 25, 34; R. 25, Pl.'s Br. at 2–4. Heard does not explicitly categorize his arguments as different theories of specific jurisdiction, but as best as can be discerned, he appears to offer two separate legal theories for the exercise of jurisdiction over the Defendants: purposeful availment or, alternatively, the effects-test theory. Neither argument succeeds.

First, in essence, Heard's purposeful-availment argument simply boils down to the fact that the Defendants distributed, marketed, and sold Jeezy's allegedly infringing song in this District. Second Am. Compl. ¶ 3. But for a court to exercise jurisdiction consistent with Due Process, the relationship must arise out of contacts that the Defendant individually creates with the forum. Here, Heard fails to present specific

7

facts or examples that show any specific conduct between each of the Defendants and Illinois, let alone any conduct that was targeted specifically at Illinois. *See generally* Second Am. Compl. For example, Heard says that "[s]ince the release of The Legend of The Snowman album in 2019, the Defendants have offered and continue to offer the song containing the tortious material for sale in Illinois in brick and mortar stores as well as via the Internet." Pl.'s Br. at 4. This sentence tells the Court nothing about any individual Defendant's conduct. Nor does it provide any information about the relationship between "continuing to offer the song" and the brick-and-mortar stores in Illinois. Did any of the Defendants participate in the sales operation of the stores? Did any of the Defendants cause the song to be shipped as a CD or product to the stores? The possibilities are vast, but the actual allegations are devoid of any specific details that could support specific jurisdiction. Indeed, as the Defendants point out, Heard presents *contradictory* statements about whether the allegedly infringing song is sold in physical stores in Illinois or whether it is only sold on the Internet. R. 28, Defs.' Reply at 2; Pl.'s Br. at 2–4.

What's more, the relationship to the forum must be based on the *Defendant's* contacts with the forum itself, not with persons residing there. *See Burger King*, 471 U.S. at 475; *Int'l Shoe*, 326 U.S. at 316. Heard's assertions exemplify the importance of that distinction (to his peril): "The Defendants have made the song available for purchase or listening on such sites as Amazon, Apple Music, Spotify and YouTube, continuously available for purchase by residents of Illinois." Pl.'s Br. at 4. This allegation simply says people residing in Illinois can purchase music from those

8

platforms, but it tells the Court nothing about how any individual Defendant put these songs on the streaming platform (or caused that sort of placement) or how such an action would mean that the Defendants purposefully directed contact with the state of Illinois. The fact that these services can be streamed in Illinois is insufficient by itself.

Heard also argues that online sales generally support specific jurisdiction. But the Seventh Circuit has cautioned district courts to "be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates an interactive website … accessible in the forum state." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019) (cleaned up). That note of caution applies here. First, Heard's allegations again mash together and discuss the Defendants as a *single* group, which makes it impossible to assess the facts as they pertain to each particular Defendant. *See, e.g.*, Second Am. Compl. ¶¶ 25, 32, 34. But more importantly, even if the allegations were broken out and made against each individual Defendant, the facts only allege that the Defendants "placed" the infringing song on the internet and on streaming platforms and that the internet and those platforms are "geared to reach the population of buyers in the State of Illinois." Pl.'s Br. at 3. Heard also alleges generally that the "majority of UGM [Universal Group] sales" occurred online and that Chicago is a major market in the hip house rap segment and Plaintiff[] has [a] fan base in the state of Illinois and surrounding states." *Id.* None of this information ties the

9

allegedly infringing song itself specifically to Illinois, nor does it show any activity particularly directed at Illinois.

Lastly, Heard argues in passing that this Court has specific jurisdiction over the Defendants under an effects-test theory. Under that type of theory, a court can exercise personal jurisdiction over a defendant that "expressly aim[s]" intentionally tortious conduct at the forum state with the knowledge that the plaintiff's harm would be felt in the forum state. *Calder v. Jones*, 465 U.S. 783, 790 (1984). The inquiry under this theory has three elements. *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010). First, the defendant must have engaged in "intentional conduct (or intentional and allegedly tortious conduct)." *Id.* (cleaned up). Second, the conduct must have been "expressly aimed at the forum state." *Id.* And finally, the defendant must know that the effects of the allegedly intentional and tortious conduct "would be felt—that is, the plaintiff would be injured—in the forum state." *Id.* For many of the reasons already discussed in this Opinion, it is clear that this case cannot satisfy *Calder*'s analytical framework. Heard has not made sufficient allegations that any of the alleged conduct was aimed at Illinois in particular, and more glaringly, not even Heard himself suggests that *he* has any connection to Illinois, or that he felt the injury in Illinois—let alone that any of the Defendants should have reasonably known he would. Remember that Heard is a citizen of *Texas*. Second Am. Compl. ¶ 4. There is nothing in the operative complaint to suggest that he suffered the harm from the alleged infringement in Illinois. *See generally id.*. Indeed, a search for the word "Illinois" in the Second Amended Complaint reveals two hits: (1) on the first page,

10

specifically the caption, in which the standard Northern District of Illinois heading is set forth, *id.* at 1; and (2) on the last page, where his lawyer's office address is provided, *id.* at 9. With this context, given that there are no allegations that any of the Defendants aimed tortious conduct at Illinois, this theory of personal jurisdiction fails.

### IV. Conclusion

None of the Defendants in this case have sufficient contacts with Illinois to satisfy due process in haling them into court here. The motion to dismiss for lack of personal jurisdiction is granted.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 27, 2022